IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| BARRON L. HAWTHORNE, #1442400 | § | |
| VS. | § | CIVIL ACTION NO.9:12cv70 |
| VALENTINO ESPINO, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Barron L. Hawthorne, an inmate confined in the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.     FACTS**

The original complaint was filed on May 14, 2012. On August 9, 2012, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Coordinator Lorie Parker, Warden William Motal and Nurse Kathy Gray testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

Plaintiff claims that on January 11, 2012, he was coming back from a sick call to his cell and stopped to pick up a grievance form. He knelt down in the hall in front of the office and refused to get up when ordered to do so. An extraction team came and placed him on a gurney, in restraints, to take him to his high security inside cell. Still in the restraints, he was placed on the floor in his cell and told to stay down on the floor while the extraction team exited the cell. However, he rolled over on his side or started to move toward a locker and yelled at the extraction team. The extraction team then re-entered the cell. He testified he was placed on the floor again and Defendant Espino began hitting him in the head and slamming his face into the floor while other officers held him down by his arms and legs and did nothing to stop Defendant Espino from hitting him. He testified he was hit 20-25 times, resulting in injuries to his head, face, left eye, nose and left and right cheekbones. In addition, Plaintiff testified that while he was held down, Defendant Reynolds twisted his testicles, which he characterized as a "sexual assault."

The extraction team left Plaintiff in his cell. Plaintiff admitted in testimony that a search of his cell revealed a shank-type weapon in his locker. He was not taken to medical because, he was told, he was being "too aggressive." He further testified that when they were done, Defendant Sgt. Whingham directed the remainder of the team to take all of his property and left him "butt naked" in his cell with air conditioning blowing in January. He asserts that he was denied lunch and dinner. At some point, Defendant Licensed Vocational Nurse Mattox saw him at his cell and he told her also about Defendant Reynolds twisting his testicles, but she left without giving him medical care. He testified it was 27 hours after he was left in his cell before he was given medical care at the unit's dispensary. He asserted that he eventually had surgery on his nose with a closed reduction for the bleeding, but that his nose was still crooked. Although his cheekbones were found to have been

fractured, they have never been fixed because the fractures did not interfere with his eating or talking.

He is suing Defendants Espino and Reynolds for their alleged excessive use of force. He is suing Defendant LVN Mattox for denial of medical care. He is suing the remainder of the Defendants, Aaron P. Riley, Joshua A. Clark, Jr., Leanna C. Combs, Philip K. Whingham and Edward B. Sells, for failing to intervene or protect him from the excessive use of force. He also claims Defendant Whingham denied him lunch and dinner on January 11, 2012, and ordered the confiscation of all of his property. He seeks $25,000 in compensatory damages "jointly and severally" and $25,000 in punitive damages, also "jointly and severally," with whatever other relief the Court deems appropriate.

Nurse Gray testified that Plaintiff's medical records showed two separate use of force examinations on January 11, 2012. The first was when the extraction team physically picked Plaintiff up initially and placed him on the gurney to return to his cell. That was at approximately 9:59 a.m. and examination showed Plaintiff had no injuries. The second was at approximately 10:01, after the incident in Plaintiff's cell, and examination showed lacerations to Plaintiff's left eye, which was swollen shut, and contusions to his cheeks. She testified that the records showed Plaintiff was seen cell side at approximately 10:09 a.m. by Defendant Mattox. However, because of Plaintiff's aggressiveness at that time, she was unable to give him any first aid or to take him out of his cell. A nurse saw him to rule out facial fractures. However, he was later transported to the hospital in Galveston on January 13, 2012. X-rays showed his cheekbone was fractured by the eye and his nose was also fractured. He also had a CAT scan, showing a displaced bilateral nasal fracture and right cheekbone fracture. He had surgery by a plastic surgeon to repair the nasal fracture

3

with a closed reduction and splint on January 18, 2012. He also had an ophthalmology consult and his blurred vision was resolved. He had a follow-up examination with the plastic surgeon on January 27, 2012, and other follow-ups in January and February.

Warden Motal testified that he had no specific records of the incident. He testified that a re-entry to a cell such as the extraction team made is intended to make an inmate stay down while the team exits the cell. It is common practice to take the restraints off while the inmate is on the floor and back out. He also testified that punches to the face are not normal and are excessive force subject to disciplinary actions.

Regional Grievance Coordinator Parker testified that Plaintiff exhausted his administrative remedies. She submitted his Grievance, Medical, Classification, Use of Force, and Confiscation of Property records for review. The Use of Force records includes a copy of the Use of Force video. Plaintiff agreed that the Court could review these records for the purpose of this lawsuit.

## II. DISCUSSION AND ANALYSIS

Pursuant to 28 U.S.C. § 1915A, the Court must review Plaintiff's complaint and dismiss it, or any portion of it, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a Defendant who is immune from such relief. A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The term "frivolous" embraces not only the inarguable legal conclusion, but also the fanciful factual allegation. *Neitzke*, 490 U.S. at 325. A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist. *Harris v. Gehmann*, 198 F.3d 153, 156 (5th

4

Cir. 1999) (per curiam). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib*, 138 F.3d at 213.

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis*

5

*v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

Here, Plaintiff alleges the excessive use of force in violation of his Eighth Amendment rights by Defendants Espino, Reynolds, Riley, Clark, Combs, Whingham and Sells. He also alleges deliberate indifference to his medical needs by Defendant Mattox.

### A. Excessive Use Of Force

Plaintiff's excessive use of force claim includes a claim that Defendant Espino hit his head or slammed it into the floor "20-25 times" after the extraction team re-entered the cell to put him back down on the floor. He also claims that Defendant Reynolds twisted his testicles while he was being held down during the re-entry. His claims against the remainder of the Defendants are essentially that they held him down while he was being subdued and did not intervene with either Defendant Espino or Reynolds. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). An excessive use of force claim has both subjective and objective components. *Id*. at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id*. at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7 (internal quotation and citation omitted). The absence of a serious injury is relevant to but not

dispositive of the excessive force claim. *Id*.

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033[1] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9-10 (other citations omitted).

On remand from this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *see also Williams v. Valenti*, 2011 WL 2650883, at *1 (5th Cir. July 7, 2011) (citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).

The Court has viewed the Use of Force video submitted with Plaintiff's records. Officer Combs operated the camera; the other officers handled Plaintiff. As he testified, it shows an extraction team at the site where Plaintiff initially refused to get up and return to his cell. At that location, he was on the floor and placed in hand and ankle restraints. He resisted standing up or

---

[1] *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973).

cooperating with the officers. He also made an aggressive, continuous and loud vocal opposition to everything that they said or did, attempting to shout down the officer who was reading from the Use of Force script and telling Plaintiff what to do to comply with orders and cease resisting. Plaintiff was placed on a stretcher with due regard for his safety and was examined by a nurse then for that Use of Force. The officers then wheeled the stretcher to Plaintiff's cell, which was nearby.

At the cell, he was lifted off and placed on the floor. From the camera angle, he can be seen from the mid-torso to his feet, but not his shoulders or head, which were blocked by the door frame. His belongings could be seen through the door. He was instructed not to move and specifically not to get up as the officers removed the hand and ankle restraints and started to back through the door. The video shows that he moved his legs consistent with trying to either get up or move to another part of the cell before all of the officers were out of the door and they executed the re-entry and subdued Plaintiff.

At that point, it is impossible to see any officer striking Plaintiff or twisting his testicles. In fact, only his lower legs and feet can be seen. There is one officer at the right of the screen that might be Defendant Espino, in the area of Plaintiff's head. That officer moved somewhat but from behind it cannot be seen what, if anything, he is doing. The rest of the officers in view simply bore their weight down on Plaintiff's arms and legs to subdue him. The camera operator never went inside the cell. Sergeant Whingham directed a search of the cell and that Plaintiff's property be removed in order to conduct a "rapid scan." He also directed that Plaintiff be stripped for a search. In the course of the cell search, a seven-inch shank was found, described as a sharpened piece of fencing, which appeared more or less like an ice pick.

Plaintiff was again directed to remain on the floor while the officers removed his hand and

8

ankle restraints and exited the cell. That time, Plaintiff complied and remained on the floor until the cell door was closed. He then arose and eventually came to the cell door while being read his rights to make a statement. He was also given a cell-side medical examination, which is described in the next section, below.

There is scant evidence in this video, despite Plaintiff's claims that there is, showing that Plaintiff was assaulted in the manner he asserts. However, it is undeniable he was injured at the face and head, requiring surgery. It is not possible to determine that he was *not* hit in the manner he described by Defendant Espino or his testicles twisted by Defendant Reynolds. Therefore, Plaintiff's allegations, if taken as true, arguably states a claim for excessive use of force against those two Defendants in this case. Defendants Espino and Reynolds will be required to answer the complaint.

However, the actions of the supporting officers was nothing other than to hold Plaintiff in place after he attempted to get up against orders during the first attempted exit. A reasonable view of the Use of Force video in this instance reveals that, even if excessive force was being used by Defendants Espino and/or Reynolds, the remaining Defendants were in no position to observe it while they were engaged in holding down a resisting and aggressive inmate. Defendant Combs never entered the cell and at all times was outside the door operating the camera as required by the Use of Force policy. In fact, her point of view of the incident was the point of view captured by the camera, which does not show any actual, overt evidence of excessive force. Instead, as Officer Combs can be heard saying more than once, Plaintiff could not be seen in his entirety (as is the goal of the video) due to the proximity of the other officers.

Sgt. Whingham was also outside the cell and not in proximity to see any excessive force

9

taking place under the group of officers holding Plaintiff down. As to Officers Riley, Clark and Sells, they clearly were wholly engaged in just holding Plaintiff down; they were not in a position to see anything that Officer Espino is alleged to have been doing at Plaintiff's head or Officer Reynolds is alleged to have been doing in twisting Plaintiff's testicles.

In terms of the *Hudson* factors, the first factor does not much come into play with regard to these officers; they are not alleged to have caused Plaintiff's injuries and, as the video shows, it does not appear that they could even have been aware of them at the time. Second, the need for the application of force was great. The officers were faced with an unruly, aggressive inmate who refused to follow orders and remain on the floor while the officers safely exited the cell in the first instance. As to the third factor, the amount of force used by these particular officers was simply to bear their weight down on Plaintiff's arms, legs and torso to immobilize him while the situation stabilized and hand and ankle restraints could be reapplied to Plaintiff. That satisfied the need for force without applying more than was necessary.

As to the fourth factor, in addition to Plaintiff's obvious aggressive attitude and refusal to remain still, the officers found (and exhibited on the video) a seven-inch sharpened piece of fence metal in the general shape of an ice pick. In other words, a dangerous shank-style weapon. The danger is clear. Finally, as to the fifth factor, these particular officers tempered their response by applying body weight for about a minute or so until shackles were applied; then cleared Plaintiff's property out of the cell for a "rapid scan" inspection, which immediately resulted in finding the shank weapon, above, and potentially could have resulted in more contraband being found in the removed property; then, under Sgt. Whingham's direction, required Plaintiff to remain still while the shackles were removed and the officers exited the cell without further incident.

Therefore, under the *Hudson* factors, these remaining officers cannot be found to have used excessive force, nor to have been in a position to even see, much less do anything about, the alleged excessive force being applied by Officers Espino and/or Reynolds.

In sum, Officers Espino and Reynolds must answer the complaint; the remaining officers will be dismissed from this lawsuit.

**B.     Deliberate Indifference To Plaintiff's Medical Needs**

Plaintiff contends that Nurse Mattox was deliberately indifferent to his medical needs after the Use of Force when she observed his injury but did not then treat him.

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment,' and this includes 'indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Erickson v. Pardus*, 551 U.S. 89, 90, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "It is not, however, every injury . . . that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on

11

the part of prison officials is not enough. *Id*. at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001).

Nurse Mattox was observed on the Use of Force video attempting initially to get Plaintiff to come to the door of his cell for a cell side visual examination, but he refused. She remained near the cell. A moment later, Plaintiff came to the cell door and was visible through its window receiving instructions at the end of the Use of Force. Nurse Mattox then returned to the window and beckoned Plaintiff to come to the side she was on, which he did. He indicated with his hand an injury to his face or head, which she examined through the glass and then wrote notes on a piece of paper, saying to him that there was a doctor there and she would try to get him in for treatment. There is no indication on the video that Plaintiff informed her of having had his testicles twisted, though he testified during the *Spears* hearing that he did so.

Nurse Mattox could not enter the cell because of Plaintiff's aggressive attitude and actions that not only resulted in the Use of Force but that clearly continued and were visible on the video through the glass door after officers exited the cell. Plainly, Nurse Mattox could not perform first aid through the glass. Further, there was no clearly "serious medical need[]" resulting in "excessive risk to inmate health or safety." Nurse Mattox performed her duties - a cell-side examination - and

12

recorded her findings to communicate to a physician. Plaintiff was seen at medical and his needs tended to, albeit not until the next day. There is no basis for concluding that Nurse Mattox was "deliberately indifferent" to Plaintiff's medical needs under this standard. Therefore, she will be dismissed from this lawsuit.

### III. CONCLUSION

It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Defendants Espino and Reynolds. It is further

**ORDERED** that the Plaintiff's remaining civil rights claims against Defendants Riley, Clark, Combs, Whingham, Sells and Mattox are **DISMISSED WITH PREJUDICE**.

So **ORDERED** and **SIGNED** this **27** day of **August, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE